IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-80173-TLS |
| | ) | |
| CHRISTOPHER CRAIG HARMEL and | ) | CH. 13 |
| KAYLEEN MARGRET HARMEL, | ) | |
| | ) | |
| Debtors. | ) | |

## ORDER

Hearing was held in Omaha, Nebraska, on September 13, 2010, on an objection to claim filed by Debtors (Fil. # 48), and a resistance by Lincoln Federal Savings Bank (Fil. #49). Howard Duncan appeared for Debtors, and Stephen Nelsen appeared for Lincoln Federal Savings Bank ("Lincoln Federal"). At the hearing, Debtors conceded that their objection should be overruled as to certain aspects of the claim, but pursued their objection with regard to the calculation of the "service charges." The parties were given the opportunity to submit written argument, and this matter is now ready for decision.

On July 3, 2003, Lincoln Federal, as landlord,[1] entered into a Lease Agreement with Orthocare Orthopedic Services, Inc., d/b/a Next Step, a Nebraska corporation, as tenant. The lease was for Suite 102 in the Lenox Village Shopping Center located at 4500 South 70th Street, Lincoln, Nebraska. The lease was for a term of 63 months with an option to renew for an additional five years. On or about November 27, 2007, Orthocare Orthopedic Services, Inc. assigned its rights as tenant under the lease to Harmel Enterprises, Inc. To induce Lincoln Federal to provide its consent to the assignment and assumption of the tenant's obligations under the lease, Christopher C. Harmel and Kayleen M. Harmel, Debtors herein, executed and delivered to Lincoln Federal a Guaranty of Lease dated November 14, 2007, under the terms of which Debtors unconditionally guaranteed to Lincoln Federal "Tenant's full and punctual performance of its obligations under the Lease, including without limitation the payment of rent and other charges due under the Lease." Further, as part of the assignment and assumption of the lease, Harmel Enterprises, Inc. exercised the five-year option to renew.

On July 31, 2009, Harmel Enterprises, Inc. abandoned the leased property. On January 22, 2010, Debtors filed their petition under Chapter 13 of the Bankruptcy Code. On or about June 29, 2010, Lincoln Federal filed its proof of claim in the amount of $99,997.56.

On July 28, 2010, Debtors filed their objection to the claim of Lincoln Federal asserting, among other things, that there is no attachment indicating how the total amount of the claim was calculated. In its resistance to the objection, Lincoln Federal identified its calculations as follows:

---

[1] Lincoln Federal Savings Bank is actually a sublessor since it leases the property from a third party.

| | | |
|---|---|---|
| Rent past due at date of abandonment | - | $11,412.00 |
| Rent for one year after abandonment pursuant to 11 U.S.C. § 502(b)(6) ($4,932.13 x 12) | - | $59,185.56 |
| Service charges of $50.00 per day on each past due rent payment from the date of abandonment to the date of bankruptcy | - | $29,400.00 |
| Total | | $99,997.56 |

As indicated previously, at the hearing Debtors conceded that their objections to the "rent" portions of the claim can be overruled. The only dispute is the calculation of the "service charges." The dispute centers around the interpretation of Section 4.3 of the lease which provides as follows:

> Section 4.3 Past Due Rents.
> If Tenant shall fail to pay any rent, additional rent, or other charges on the first of the month, then Tenant shall pay to Landlord a late charge equal to the greater of $50.00, or half of one percent (0.5%) of such unpaid sum for each day that such rent has not been received by Landlord. Notwithstanding such service charge or its acceptance by Landlord, the same shall not be deemed or construed as a waiver of Landlord's right to declare a default pursuant to Article X hereof.

At the hearing, counsel for Lincoln Federal explained that the service charge, or late charge, was assessed on a per day basis for each of the past due rent payments that accrued after the date of abandonment. For example, $50.00 per day was charged from August 1, 2009, through the date of the bankruptcy filing for the August 1 payment. An additional $50.00 per day was charged from September 1, 2009, through the date of bankruptcy filing for the September 1 rent payment. In other words, the landlord treated each monthly rental default as a new item upon which the daily late charge could be assessed, in addition to the late charge for the earlier defaults. Debtors take the position that the late charge should not be cumulative for each late payment, but instead should be a simple calculation of $50.00 per day for each day that any amounts due remained unpaid between the date of abandonment and the date of bankruptcy filing.

As an initial matter, the Court will assume for purposes of this Order that the parties are correct in using the date of abandonment through the date of bankruptcy filing as the relevant time period. It does appear that there was a default prior to the date of abandonment since the claim includes a claim for rent for that period of time, but it is unclear whether there were any late charges assessed for that period and, in any event, the claim does not seem to request any late charges for that period.

The parties were given the opportunity to provide written argument addressing any legal precedent for their positions, but neither party was able to provide any. Accordingly, the Court is

faced with the task of interpreting the late charge provision in the lease. In Nebraska, a contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract. *Kuhn v. Wells Fargo Bank of Neb., N.A.*, 771 N.W.2d 103, 115 (Neb. 2009). A court interpreting a contract must first determine as a matter of law whether the contract is ambiguous. *Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 422 (Neb. 2010). A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Id.* However, when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings, the contract is ambiguous. *Id.* When an ambiguity exists, the contract's meaning is a question of fact for which the court may consider extrinsic evidence. *Id.* at 423.

I find that the contract at issue is ambiguous since it is susceptible to two reasonable but conflicting interpretations. I further find that Debtors' interpretation is more reasonable. First, the clause refers to the failure "to pay **any** rent, additional rent, or other charges . . ." (emphasis added). Thus, the clause indicates that the $50.00 per day charge is applicable whenever any amounts due under the lease remain unpaid. A new monthly rent obligation that becomes past due merely increases the amount past due, but does not necessarily create an independent basis for a new late charge. The provision calls for a charge of $50.00 for each day that any amounts are past due, not $50.00 per day for every item that is past due. Second, it would simply be unconscionable to calculate the late charge in the manner proposed by Lincoln Federal.

IT IS, THEREFORE, ORDERED that the objection to claim (Fil. #48) is sustained in part and the claim of Lincoln Federal is reduced to the total sum of $79,347.56.

DATED: October 12, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Howard Duncan
    *Stephen Nelsen
    Kathleen Laughlin
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.